# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**GARY A. MILLER,**

> **Plaintiff,**

**-v-**                                    **CASE NO. 2:09-cv-650-FtM-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

> **Defendant.**

_____/

## OPINION AND ORDER[1]

Plaintiff filed an application for a period of disability, disability insurance benefits

[DIB] and Supplemental Security Income on April 4, 2003, alleging an onset of disability on

April 2, 2003 (Tr. 57, 691). After a hearing, an administrative law judge (ALJ) issued a

decision on October 25, 2005, denying Plaintiff's applications (Tr. 10). The Appeals Council

denied Plaintiff's request for review, and Plaintiff filed an action in this Court (Tr. 4, 8). On

May 11, 2007, this Court remanded Plaintiff's case, ordering the Commissioner "to conduct

further inquiry into Dr. Roggow's opinion . . . and to conduct such further proceedings as

necessary to properly resolve the claim" (Tr. 423-27). The Appeals Council vacated the

ALJ's decision and remanded Plaintiff's case to an ALJ (Tr. 431-33). After another hearing,

Plaintiff amended his alleged onset date to December 1, 2006 (Tr. 690, 725). On March 4,

---

[1]       Both parties have consented to the exercise of jurisdiction by a magistrate judge, and
the case has been referred to the undersigned by an Order of Reference signed by
District Judge John E. Steele dated December 30, 2009.  (Doc. 16).

2009, Administrative Law Judge Richard E. Ouellette issued a decision denying Plaintiff's

applications (Tr. 355). The Appeals Council found no basis to assume jurisdiction, making

the ALJ's decision the final decision of the Commissioner (Tr. 314). Plaintiff has exhausted

his administrative remedies, and this case is ripe for review under 42 U.S.C. §§ 405(g) and

1383(c)(3).

The Commissioner has filed a transcript of the proceedings (hereinafter referred to

as "Tr." followed by the appropriate page number), and the parties have filed legal their

memoranda. For the reasons set forth below, the Court finds that the Commissioner's

decision is due to be **AFFIRMED.**

I.      **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
        AND STANDARD OF REVIEW**

Plaintiff is entitled to disability benefits when he is unable to engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to either result in death or last for a continuous period of not less than

twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has

established a five-step sequential evaluation process for determining whether Plaintiff is

disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v.

Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion

through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987).

The decision of Administrative Law Judge Richard E. Quellette, March 4, 2009, found Plaintiff was not under a disability as defined in the Social Security Act, at any time from December 1, 2006, the amended alleged onset date[2], through the date of the decision 20 C.F.R. 404.1520(g).

At Step 1 the ALJ found  Plaintiff  had not engaged in substantial gainful activity since his amended alleged onset date of December 1, 2006, through the date of the decision. Plaintiff's date last insured ("DLI") is December 31, 2008 (Tr. 361).   At Step 2 the ALJ found Plaintiff suffers from severe impairments of: "s/p spinal fusion 1991 with chronic back pain, chronic left hand pain and a substance abuse disorder (Tr. 361)".  At Step 3 the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 361).  At Step 4 the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform "light" work with an occasional limitation for bending, stooping, crouching, kneeling and concentrating on tasks assigned with a frequent limitation for performing repetitive tasks such as pushing and pulling with the left hand and performing tasks requiring fine manual dexterity but capable of performing routine, repetitive tasks (Tr. 362). At Step 5 the ALJ found Plaintiff was unable to perform his past relevant work as a truck driver (Tr. 370). Relying on the testimony from vocational expert (VE) Ms. Joyce

---

[2]     Plaintiff gave no explanation for amending his onset date after the hearing (Tr. 358).

-3-

Ryan[3], the ALJ found Plaintiff could perform other jobs in the national economy consistent with his "RFC" of light work.

In reviewing a decision by the Commissioner, the District Court is bound to uphold the Commissioner's findings if they are supported by substantial evidence and based upon proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). Factual findings are conclusive if supported by "substantial evidence," which is more than a scintilla and consists of such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d at 1440. The Court does not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's decision is supported by substantial evidence, the Court must affirm even if the evidence predominates against the decision. *Wilson v. Barnhart*, 284 F.3d at 1291. However, the Court must conduct an exacting examination of whether the Commissioner followed the appropriate legal standards in deciding the claim and reached the correct legal conclusions. *Wilson v. Barnhart*, 284 F.3d at 1291. The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted will mandate reversal. *Keeton v. Department of Health and Human Servs.*, 21 F.3d at 1066.

---

[3]    Plaintiff objected to Ms. Ryan, the vocational expert, in a letter written prior to the hearing finding Ms. Ryan " is not qualified and not credible". However, Plaintiff's counsel did not renew objection to Ms. Ryan at the hearing thereby waiving the objection (Tr. 358).

## II.     REVIEW OF FACTS

### A.     BACKGROUND FACTS

Plaintiff was forty-seven years old at the time of the ALJ's decision and was born on February 6, 1961 (Tr. 57).  Plaintiff has a limited education (completed 8th grade) and past relevant work experience as a dump truck driver, general heavy equipment operator, and backhoe operator (Tr. 69, 125, 756-57).

The Appeals Counsel, after remand from the District Court, directed the ALJ to further evaluate Plaintiff's treating physician, Dr. Debra Roggow's opinion that Plaintiff "was temporarily totally disabled and determine the duration of the alleged temporary disability, or articulate reasons to discount the opinion."

Plaintiff initially alleges that he became disabled on April 2, 2003, due to a history of a spinal fusion in 1991 with chronic back pain.  Plaintiff amended that onset date to December 1, 2006, without explanation.  The evidence documents treatment for chronic back pain, status post fusion of the left wrist and drug abuse.  On January 3, 2002, Dr. Johnsen performed a pain management evaluation.  The doctor noted a history of a motor vehicle accident in 1997 with the Plaintiff being "treated with a spinal fusion" and having "on-going residual difficulties (Tr. 363)".

Dr. Roggow's earliest office note is dated January 28, 2000, and documents Plaintiff's complaints of low back and right shoulder pain and his spinal fusion surgery of L5/S1 with hardware, in 1990/1991, and a status post left wrist fusion. (Tr. 188). Dr.

Roggow saw Plaintiff regularly for follow-up of his pain and medication management, through November 2000, noting in September 2000 that he had been injured in a motor vehicle accident which resulted in acute cervical strain. (Tr. 163-187). Her diagnoses were consistent for myofascial pain syndrome of the cervical region; chronic lumbar radicul-opathy with right lower extremity pain and motor/sensory deficit; and anxiety, as well as right shoulder pain. (Tr. 169, 171, 175, 177, 179). Also, Dr. Roggow ordered EMG studies in February 2000 which revealed "chronic denervation along the right L4/5 myotomes," as well as findings consistent with L4-5 level and right lower extremity chronic radiculopathy. (Tr. 173, 181, 182). Dr. Roggow's only entry for 2001 is dated January 9, 2001, indicating Plaintiff was followed for right biceps tendinitis which was aggravated by his work duties involving "repetitive motion and strain to the right arm and shoulder by doing manual labor." (Tr. 168). Her notes reflect that Plaintiff's medications remained the same, and that at that time she administered an injection of Depo-Medrol and Marcaine into his right biceps tendon.

Plaintiff continued to complain of back pain and increased leg pain in February and August 2002, despite medications, including Oxycontin. (Tr. 165, 166). In February 2002, Dr. Roggow noted that recent CAT scan results showed "evidence of L4-5 and 5-S1 laminectomy with intrapedicular screws in place and granulation tissue with residual fibrosis suspected." (Tr. 166, Tr. 192). Dr. Roggow noted in August 2002, that in addition to his prior pain complaints, Plaintiff had developed numbness along the left lateral foot, and even

though she listed a diagnosis of opiate dependence, Dr. Roggow explicitly stated, "Gary continues to present to the office with no evidence of over sedation and there have been no significant compliance issues with the medication." (Tr. 165).

Dr. Roggow's next office note is dated a year later, January 22, 2002, in which she explained that it was "an annual visit for continued evaluation and management of chronic pain, secondary to lumbar radiculopathy." (Tr. 167). Plaintiff reported he was still working full-time, but was experiencing more stress at work, complaining of continued constant pain in his lower right back radiating down his right leg to the toe, and that he also had inter-mittent pain in his left leg radiating to his knee.  Dr. Roggow's diagnosis remained, "Chronic lumbar radiculopathy with intractable pain, status post laminectomy at the L5-S1 level," and she indicated the possibility of "progression of epidural fibrosis or other etiology of increased radicular pain." Plaintiff's medications were listed as OxyIR, Soma, and Sonata.

Dr. Roggow's last office note contained in the record is dated August 27, 2003, indicating a "one-month interval revisit for periodic review of pain management, medication, and compliance." (Tr. 162). At that time, Dr. Roggow maintained that Plaintiff had been "compliant with his prescriptions recently,"which included the medications listed above. (Tr. 162). She explained that Plaintiff continued to have "subjective dullness to sensation along the left lateral foot," that there was "soft tissue protuberance superior to the laminectomy scar," and she again confirmed that there was "hardware fixation with

granulation tissue and residual fibrosis." Dr. Roggow reiterated her diagnoses of "Chronic

intractable low back pain with lumbar radiculopathy, history of cervicoscapular myofascial

pain", and "Opiate dependence and methadone dependence for pain." She increased

Plaintiff's Methadone dosage "from 2 tablets to 3 tablets," on a trial basis, noting that

Plaintiff reported problems of sleepwalking on the 40 mg. dosage. In addition, Dr. Roggow

provided a "To Whom It May Concern" letter, dated August 27, 2003, explaining:

> "[T]he purpose of this letter is to confirm that this physician has been treating
> Gary Miller for chronic intractable pain and impairment secondary to
> cervico-scapular myofascial syndrome and lumbar radiculopathy. Gary has
> required opiate-level analgesia as pain management. He has not been
> gainfully employed since April of this year and has been temporarily totally
> disabled during the interval (Tr. 163)."

Record evidence also contains further documentation that Dr. Roggow referred Mr.

Miller to Lee Memorial Health System in November 2003, for another routine lumbar spine

screening which showed "post surgical changes at the lumbosacral level and forward

displacement of L5-with respect to S1," which represented "[n]o significant change when

compared to the previous examination," dated January 25, 2000. (Tr. 236). However, with

Dr. Roggow still listed as Plaintiff's primary care physician, Plaintiff was seen again at Lee

Memorial Health System in December 2003, "in a confused state," and testing and

laboratory reports indicated diagnoses of: thrombocytopenia, pneumonia, seizures, chest

wall pain, hyperventilatory syndrome, cocaine abuse, myocardial injury, and rhabdomyolysis

(Tr. 219-233).

Dr. Roggow's opinion is from the period of April 2, 2003, through August 27, 2003. The record shows no further notes from Dr. Roggow after August 2003 and Plaintiff indicated in his testimony that Dr. Roggow refused to offer further treatment after laboratory studies came back positive for cocaine and marijuana. The ALJ found that even had Dr. Roggow's opinion been given substantial weight, the Plaintiff's disability would not meet the durational requirement of the Regulations as it only relates to a five month period and was made years before the amended alleged onset date. (Tr. 367).

## III.     SPECIFIC ISSUES

### A.     THE ALJ'S FINDING THAT PLAINTIFF'S IMPAIRMENTS DID NOT MEET OR EQUAL A LISTED IMPAIRMENT

Plaintiff contends his impairments met or equaled section 1.04 of the Listing of Impairments (Listings), 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (2010). (Pl.'s Br. 15-18). However, Plaintiff failed to meet his burden of proving that his impairments met or equaled Listing 1.04. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. A claimant's impairments must meet or equal all of the specified medical criteria in

a particular listing for the claimant to be found disabled at step three of the sequential

evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).

Substantial evidence supports the ALJ's finding that Plaintiff did not have an

impairment or combination of impairments that met or equaled a listed impairment,

including Listing 1.04 (Tr. 361), which states in relevant part:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in
> compromise of a nerve root (including the cauda eqina) or the
> spinal cord. With:
>
> A. Evidence of nerve root compression characterized by
> neuroanatomic distribution of pain, limitation of motion of the
> spine, motor loss (atrophy with associated weakness or muscle
> weakness) accompanied by sensory or reflex loss and, if there
> is involvement of the lower back, positive straight-leg raising
> test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. Although the ALJ found that Plaintiff's severe

impairments included status-post fusion in 1991, his fusion does not appear to represent a

disorder of the spine. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00K. Also x-rays of Plaintiff's

lumbar spine in January 2000, November 2003, and February 2007, and a CT scan in

January 2002, merely showed post-surgical changes with forward displacement of L5 over

S1 and other minor abnormalities such as mild or moderate disc space loss at L5,

granulation tissue with residual fibrosis suspected, some degenerative changes, and minimal

sclerotic changes (Tr. 166, 192-93, 236, 248, 681). Even if Plaintiff's post-surgery condition

is considered a disorder of the spine, the diagnostic imaging did not show that his condition resulted in "compromise of a nerve root . . . or the spinal cord," as required by Listing 1.04. In particular, the x-rays of Plaintiff's lumbar spine from February 2007 specifically showed no evidence for compression deformity (Tr. 681). Therefore, Plaintiff failed to provide medically acceptable imaging evidence that he had impingement or compromise of a nerve root or the spinal cord. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00C.1. , K, 1.04. Plaintiff's failure to provide evidence of compromise of a nerve root or the spinal cord alone is sufficient to show that his impairments did not meet or equal Listing 1.04. *Zebley, 493* U.S. at 530-32; *Wilkinson*, 847 F.2d at 662.

Further, examinations from shortly before and after Plaintiff's alleged onset date of December 1, 2006, did not reveal that he consistently had all of the criteria of subsection A of Listing 1.04 (Tr. 630-36, 667-88). 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00D, E, H1., 1.04A. Although Plaintiff displayed reduced range of motion, he did not consistently have noteworthy muscle weakness, sensory or reflex loss, or positive straight-leg raise test (sitting and supine) (Tr. 632, 634, 667-88). Plaintiff relies on findings by Dareld Morris, M.D., regarding straight-leg raise testing  However, Dr. Morris examined Plaintiff in July 2003, more than three years before his alleged onset date (Tr. 150-53).

Plaintiff also states that Stanley Rabinowitz, M.D., indicated in September 2006 that Plaintiff had positive straight-leg raising on the right at sixty degrees in the supine position (Tr. 632).  However, Dr. Rabinowitz found that Plaintiff had negative straight-leg raising

bilaterally in the sitting position (Tr. 632). Thus, Dr. Rabinowitz's findings show that

Plaintiff did not have the sitting and supine positive straight-leg test required by subsection

A of Listing 1.04. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B.  In addition, records from

Fred Liebowitz, M.D., who treated Plaintiff from February 2007 through February 2008,

indicate Plaintiff displayed inconsistent results with straight-leg raising (Tr. 667-69, 672-74,

678-80).

Thus, the medical evidence does not establish that Plaintiff's impairments met or

equaled all of the criteria of subsection A of Listing 1.04, particularly for any consecutive

period of at least twelve months (i.e., the duration requirement). 20 C.F.R. §§ 404.1505(a),

404.1509, 404.1520(a)(4)(iii), 416.905(a), 416.909, 416.920(a)(4)(iii).  Moreover, Plaintiff

failed to satisfy the threshold requirement of a disorder of the spine "resulting in

compromise of a nerve root . . . or the spinal cord." 20 C.F.R. pt. 404, subpt. P, app. 1, §

1.04. Therefore, Plaintiff failed to meet his burden of proving that his impairments met or

equaled Listing 1.04.

### B.   THE ALJ PROPERLY REJECTED THE OPINION OF DR. LIEBOWITZ

Contrary to Plaintiff's contentions, the ALJ properly considered and rejected the

opinions of Dr. Liebowitz (Tr. 369, 660-66, 689).

> [T]he weight afforded a physician's opinion on the issue(s) of
> the nature and severity of a claimant's impairments depends
> upon the physician's examining and treating relationship with
> the claimant, the evidence the physician presents to support
> his opinion, how consistent the opinion is with the record as a

> whole, the physician's specialty, and other factors. 20 C.F.R.
> §§ 404.1527(d), 416.927(d). Generally, a treating physician's
> opinion is entitled to more weight, and an ALJ must give good
> reasons for rejecting a treating physician's opinion. 20 C.F.R.
> §§ 404.1527 (d)(2), 416.927(d)(2). However, the opinion of a
> physician, even a treating physician, may be discounted when
> the opinion is not supported by objective medical signs and
> diagnostic testing or if the opinion is inconsistent with the
> record as a whole. 20 C.F.R. §§ 404. 1527(d), 416.927(d).

Moreover, opinions on some issues, such as whether the claimant is disabled, whether the claimant's impairments meet or equal a listed impairment, the claimant's "RFC", and the application of vocational factors, "are not medical opinions, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e), 4216.927(e); Social Security Ruling (SSR) 96-5p;5 *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). In addition, although statements from acceptable medical sources about what a claimant can still do are relevant evidence, they are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC. 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527, 404.1545, 404.1546(c), 416.912(b)(2), 416.913(b)(6), 416. 927, 416.945, 416.946(c); SSR 96-5p.

Substantial evidence supports the ALJ's decision to reject Dr. Liebowitz's opinion (Tr. 369). Dr. Liebowitz opined that Plaintiff had significant functional limitations, exhibited the requirements of subsection A of Listing 1.04, and would be disabled if he

stopped using alcohol or drugs (Tr. 660-61, 664, 689).  However, Dr. Liebowitz's opinions that Plaintiff was disabled and that Plaintiff's impairments met or equaled subsection A of Listing 1.04 represent opinions on issues reserved for the Commissioner (Tr. 664, 689). 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p; *Lewis*, 125 F.3d at 1440; *Bell*, 796 F.2d at 1353-54.

As discussed by the ALJ, Dr. Liebowitz's opinions, including his opinion regarding Plaintiff's functional limitations, were not entitled to any relevant weight because Dr. Liebowitz failed to provide objective medical findings to support his opinions (Tr. 365, 369). See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Dr. Liebowitz's records do not support his opinions that Plaintiff's impairments  met or equaled Listing 1.04 (Tr. 667-89).  X-rays of Plaintiff's lumbar spine did not reveal evidence of compression deformity, and Dr. Liebowitz's notes do not include significant clinical abnormalities (Tr. 365, 369, 667-81). Moreover, Dr. Liebowitz merely prescribed medication for Plaintiff's condition, which Plaintiff reported helped control his alleged pain (Tr. 667-80). Dr. Liebowitz did not recommend surgery or other treatment, nor did he order diagnostic studies after obtaining x-rays in February 2007, when he first saw Plaintiff (Tr. 681). The record also indicates Dr. Liebowitz did not see Plaintiff after February 2008 (Tr. 369, 667-81). Dr. Liebowitz's routine and conservative treatment of Plaintiff, as well as Plaintiff's admissions that his medications helped control his alleged pain, provide further evidence undermining Plaintiff's allegations and Dr. Liebowitz's opinions. 20 C.F.R. §§

-14-

404.1527(d)(2)(ii), 404.1529(c)(iv), (v), 416.927 (d)(2)(ii), 416.929(c)(iv), (v); *Wolfe v.*

*Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

Dr. Liebowitz's failure to provide sufficient objective medical findings to support his

opinions provides substantial evidence to support the ALJ's decision to reject Dr.

Liebowitz's opinions. Although Plaintiff testified that he provided copies of medical records

from Debra Roggow, M.D., and Ephraim Aguilar, M.D., to Dr. Liebowitz, (Pl.'s Br. 20), Dr.

Liebowitz's notes do not indicate that he reviewed the records of Dr. Roggow or Dr. Aguilar

or that he relied on their records in reaching his opinions (Tr. 660-89). Moreover, Dr.

Roggow did not see Plaintiff after August 2003, more than three years before his alleged

onset date, and Dr. Aguilar did not see Plaintiff after May 2006 (Tr. 162-93, 565-629, 690).

Plaintiff testified that Dr. Roggow stopped treating him because he was using cocaine (Tr.

755). In any event, the ALJ considered the evidence from Dr. Roggow and Dr. Aguilar, and

Plaintiff failed to show that those records supported Dr. Liebowitz's opinions (Tr. 363-70).

A consultative examination by Stanley Rabinowitz, M.D., in September 2006

undermines Dr. Liebowitz's opinions (Tr. 368-69, 630-36). Although Plaintiff displayed

reduced range of motion in his back and had some edema and decreased sensation, Dr.

Rabinowitz's other findings were basically unremarkable (Tr. 631-32, 634-36). Dr.

Rabinowitz noted Plaintiff had no joint inflammation, joint deformity, instability,

contracture, or muscle spasm; negative straight-leg raising bilaterally in the sitting position;

normal reflexes; normal motor strength except for mild weakness in his left foot and reduced

grip strength in his left hand; only a mild right antalgic gait without the use or need of an assistive device; and he could do fine and gross movements with either hand (Tr. 631-32, 634-36). Dr. Rabinowitz also indicated Plaintiff's mental condition was normal, including intact memory (Tr. 632). Dr. Rabinowitz's findings do not indicate Plaintiff's condition was as limiting as Dr. Liebowitz opined.

The record indicates Dr. Aguilar did not see Plaintiff after a drug screen in May 2006, and Dr. Aguilar's earlier records do not indicate Plaintiff had significant abnormalities (Tr. 250-82, 364-65, 565-629). Plaintiff did not submit evidence of further treatment until he saw Dr. Liebowitz in February 2007, a gap of more than eight months (Tr. 683). Plaintiff's lack of treatment provides further evidence that his condition was not as limiting as Dr. Liebowitz opined. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). The findings of the state agency medical and psychological consultants also provide evidence undermining Dr. Liebowitz's opinions (Tr. 361, 369, 543-64, 637-58). State agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence. 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(i); SSR 96-6p.  The assessments of the state agency consultants are supported by the medical evidence and consistent with the record as a whole. 20 C.F.R. §§ 404.1527 (d)(4), (f)(2), 416.927(d)(4), (f)(2); SSR 96-6p. Thus, their assessments further undermine Dr. Liebowitz's opinions. Plaintiff contends the ALJ could not rely on the assessments of the state agency consultants because they did not examine Plaintiff and their assessments

contradict Dr. Liebowitz's opinions. (Pl.'s Br. 21-22). Plaintiff, however, relies on case law from before 1991 and 2000, when the Commissioner changed the regulations regarding the evaluation of medical source opinions, and an unpublished decision that did not recognize the change in the law. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f); 65 Fed. Reg. 11,866 (Mar. 7, 2000); 56 Fed. Reg. 36,932 (Aug. 1, 1991). The current regulations allow an ALJ to rely on the assessments of non-examining physicians if the record supports their opinions. 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f); SSR 96-6p. As the Eleventh Circuit has noted, "new regulations at variance with prior judicial precedent are upheld unless they exceeded the [Commissioner's] authority or are arbitrary and capricious." *Satellite Broadcasting and Communications v. Oman*, 17 F.3d 344, 348 n.8 (11th Cir. 1994). Thus, to the extent prior case law conflicts with the Commissioner's regulations, the courts should defer to the Commissioner's regulations. Given the assessment of the state agency consultants, Dr. Rabinowitz's findings, the x-ray findings from February 2007, and Dr. Liebowitz's own clinical findings and conservative treatment of Plaintiff, substantial evidence supports the ALJ's decision to reject Dr. Liebowitz's opinions.

### C. THE ALJ FAILED TO SUSTAIN HIS BURDEN OF PROOF THAT THERE IS OTHER WORK IN THE NATIONAL ECONOMY PLAINTIFF CAN PERFORM

Plaintiff contends the ALJ's hypothetical question to the VE was incomplete because it did not include the ALJ's notation that Plaintiff had "moderate difficulties" in the area of "concentration, persistence or pace" (Tr. 362). Plaintiff's argument is

without merit. The ALJ's notation was merely one of the ratings he had to provide pursuant to the psychiatric review technique used in assessing mental impairments (Tr. 27). 20 C.F.R. §§ 404.1520a(c), (e)(2), 416.920a(c), (e)(2); *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). The ratings made using the psychiatric review technique are not an RFC assessment; instead, they are used to rate the severity of a claimant's mental impairment(s) at steps two and three of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(ii), (iii), 404.1520a (d)(1), (2), 416.920(a)(4)(ii), (iii), 416.920a(d) (1), (2); SSR 96-8p. The ALJ properly used the psychiatric review technique ratings to find at steps two and three of the sequential evaluation process that Plaintiff had severe mental impairments, but his impairments did not meet or equal a listed impairment (Tr. 361-62). 20 C.F.R. §§ 404.1520a(d)(1), (2), 416.920a(d)(1), (2).

When a claimant has a severe mental impairment but his impairments do not meet or equal a listed impairment, then the ALJ will assess the claimant's RFC. 20 C.F.R. §§ 404.1520a(d)(3), 404.1545, 404.1546(c), 416.920a(d)(3), 416.945, 416.946(c). A mental RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories" rated using the psychiatric review technique. SSR 96-8p. Rating a claimant as having a "moderate" degree of limitation in a broad area of functioning merely means the limitation is more than "mild" and less than "marked." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Thus, a "moderate" limitation in a broad area of functioning has little to no meaning in terms of a Plaintiff's RFC.

Given the nebulous nature of the term "moderate," the Commissioner instructs adjudicators who complete mental RFC forms not to use non-specific qualifying terms such as "moderate" or "moderately severe" because "[s]uch terms do not describe function and do not usefully convey the extent of capacity limitation." Program Operations Manual System DI 24510.065(B)(1). In addition, the conjunction "or" in the broad functional area of "concentration, persistence, or pace" means that the claimant may have "moderate" deficiencies in only one of the three, two of the three, or all three, which further illustrates why the phrase provides little or no guidance regarding a claimant's actual functional limitations. Thus, using the ratings from the psychiatric review technique in an RFC finding or hypothetical question is not required or appropriate. *Gantea v. Commissioner* Social Security, No. 09-15704, 2010 WL 2179517, at *1 (11th Cir. June 2, 2010); *Martino v. Barnhart*, No. 01-17085, 2002 WL 32881075, at *2 (11th Cir. 2002).

In Plaintiff's case, the ALJ complied with the regulations and SSR 96-8p by providing a more detailed assessment of Plaintiff's mental RFC and by not simply reiterating his psychiatric review technique ratings (Tr. 362). 20 C.F.R. §§ 404.1520a (d)(3), 404.1545, 404.1546(c), 416.920a(d)(3), 416.945, 416.946(c); SSR 96-8p. The ALJ found that Plaintiff's "moderate difficulties" in concentration, persistence, or pace resulted in Plaintiff being limited to routine, repetitive tasks (Tr. 362). The VE testified that an individual with Plaintiff's limitations could perform Claimant's past relevant work as a telemarketer (Tr. 631-32). The ALJ properly translated his psychiatric review technique

ratings into a more detailed assessment of Plaintiff's mental RFC, and the VE's testimony provides substantial evidence that, given his RFC, Plaintiff could perform other work (Tr. 757-59). 20 C.F.R. §§ 404.1520a(d)(3), 404.1545, 404.1546(c); SSR 96-8p; Martino, at *2; cf. *Richter v. Commissioner of Social Security*, No. 09-12674, 2010 WL 2017650, at *2-4 (11th Cir. 2010) (ALJ's hypothetical question did not account for deficiencies in "concentration, persistence, or pace," but noting that restricting a claimant to simple, routine, repetitive tasks could account for such deficiencies if supported by the medical evidence). Plaintiff failed to prove that his mental condition imposed any additional limitations on his ability to work.

Plaintiff's reliance on out-of-circuit case law and a district court decision is misplaced. (Pl.'s Br. 23-24). Case law from other circuits and district courts are not binding on this Court. *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004); *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). Moreover, the decisions cited by Plaintiff are not persuasive. None of the decisions properly considered the directives of the regulations and SSR 96-8p. The ALJ's in those cases did not adequately translate their psychiatric review technique ratings into their RFC findings or hypothetical questions. Conversely, as discussed above, the ALJ in Plaintiff's case complied with the regulations and SSR 96-8p, and the ALJ's RFC finding and hypothetical question properly accounted for Plaintiff's "moderate difficulties" in concentration, persistence, or pace.

Plaintiff failed to meet his burden of proving that his mental condition prevented him from performing the jobs identified by the VE and the ALJ. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

## D.     THE ALJ PROPERLY CONSIDERED PLAINTIFF'S HISTORY OF DRUG ABUSE

Plaintiff contends the ALJ did not properly consider his history of drug abuse in accordance with the Social Security Act and the regulations pertaining to substance abuse. (Pl.'s Br. 25-27). 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. However, the ALJ never found Plaintiff disabled due to drug abuse or any other condition. Thus, the ALJ did not find that Plaintiff's drug abuse was a contributing factor material to a finding of disability because Plaintiff was not disabled, even considering his history of drug abuse. The ALJ merely discussed Plaintiff's history of drug abuse as evidence undermining his subjective complaints of disabling pain and other symptoms (Tr. 363-70). The ALJ also properly noted that despite his request and assurances by Plaintiff's counsel, Plaintiff did not provide the results of a drug test administered by Dr. Liebowitz in February 2008, the last time Plaintiff received treatment prior to the ALJ's decision in March 2009 (Tr. 355, 365-66, 368-69, 667, 729-30). Nothing in the Social Security Act, regulations, or case law prohibited the ALJ from considering this evidence in assessing the credibility of Plaintiff's allegations. Plaintiff's history of drug abuse and lack of cooperation provide further evidence that his alleged symptoms were not as limiting as he claimed.

IV.     **CONCLUSION**

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED.**   The Clerk of the Court is directed to enter judgment and thereafter close the file.

**DONE AND ENTERED** in Chambers at Fort Myers, Florida, this 28th   day April , 2011.

_____

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:
John R. Rudy, III, A.U.S.A.
Carol Avard, Esquire